<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ELITE ORTHOPEDIC & SPORTS MEDICINE PA,

        *Plaintiff*,

v.

AETNA INSURANCE CO.,

        *Defendant*.

Civil No.: 14-6175 (KSH) (CLW)

**<u>Opinion</u>**

**<u>Katharine S. Hayden, U.S.D.J.</u>**

**I.    <u>Introduction</u>**

Elite Orthopedic & Sports Medicine PA ("Elite Orthopedic") sued Aetna Insurance Co. ("Aetna') in state court alleging that Aetna breached two contracts by failing to pay the full amount submitted in connection with medical services provided to individuals insured under two employee health plans of which Aetna was the administrator or provider. (D.E. 1-1 ("Compl").) Aetna removed the action to this Court pursuant to 28 U.S.C. § 1441, claiming that Elite Orthopedic's state law claims are completely preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*., and so the complaint presented a federal question conferring this Court with original jurisdiction under 28 U.S.C. § 1331. (D.E. 1 ("Notice of Removal").) Elite Orthopedic now moves to remand. (D.E. 5.) As set forth below, the motion is denied.

**II.    <u>Background</u>**

Elite Orthopedic is a medical service provider licensed in the State of New Jersey. (Compl., Count 1, ¶ 1.) It alleges that Aetna "pre-certified and authorized" it, as an out-of-network provider, to perform surgery on two patients, GR and RK (collectively "the insured"). (*Id.*, Count 1, ¶ 3.) Aetna was the Claims Administrator for GR's UBS Financial Services, Inc. Group Health and Welfare Benefits Plan and the Benefit Provider for RK's ADP Total Source, Inc. Health Benefit Plan. (Notice of Removal, ¶ 6.) The insureds' health plans qualify as ERISA-governed employee welfare benefit plans. (*Id.*)

Elite Orthopedic claims that Aetna refused to pay the bills submitted for the surgeries in full. (*Id.*, Count 1, ¶¶ 4-6.) It asserts that it is owed, in total, $151,936.29. (Compl., Count 1, ¶ 7.) Elite Orthopedic submitted two Health Insurance Claim Forms ("HICF") to Aetna on behalf of each insured, indicating that it had assignments of the insureds' right to payment. (D.E. 5, Exs. B, F ("HICF Forms").) Box 27 of both forms states in capital letters "ACCEPT ASSIGNMENT" with alternatively "Yes" and "No" boxes below to be filled in. (*Id.*) On both HICFs the "Yes" box contains a checkmark signifying that Elite Orthopedic accepted an assignment. (*Id.*) And box 13 on both insureds' HICFs also shows that they assigned their right to payment. The box states: "INSURED'S OR AUTHORIZED PERSON'S SIGNATURE I authorize payment of medical benefits to the undersigned physician or supplier for the services described below," and on the line below that statement, there is an indication that the insureds' signatures assigning the right to receive payment are on file with Elite Orthopedic.[1] (*Id*

---

[1] Elite Orthopedic has unfortunately neglected to submit the insureds' assignments thereby preventing the Court from better determining the scope of rights conveyed to Elite Orthopedic. Whether Elite Orthopedic's omission was done in attempt to avoid federal jurisdiction is of little matter because the Court may look beyond the face of its complaint to determine if its claims are preempted. *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 274 (3d Cir. 2001).

On August 4, 2014, Elite Orthopedic filed a complaint in state court seeking payment from Aetna of the "reasonable customary and usual value" of its medical services in the amount of $151,936.29. (*Id.*, Count 2, ¶ 2.) Aetna removed, claiming that Elite Orthopedic's breach of contract claims were preempted by § 502(a) of ERISA, 29 U.S.C. § 1132(a), because they sought a determination of benefits under the insureds' ERISA-governed health plans. (*Id.* ¶¶ 7-15.)

In its motion, Elite Orthopedic asserts that Aetna's pre-certification and authorization created separate, independent contracts, apart from the insureds' health plans, in which Aetna promised to reimburse Elite Orthopedic for the medical services it provided, and asserts that Aetna breached those contracts by refusing to pay in full. As such, Elite Orthopedic contends its lawsuit should go back to state court.

### III. Discussion

#### A. ERISA

"ERISA comprehensively regulates, among other things, employee welfare benefit plans that, 'through the purchase of insurance or otherwise,' provide medical surgical, or hospital care, or benefits in the event of sickness, accident, disability, or death." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44 (1987) (quoting 29 U.S.C. § 1002(1)). One of its primary objectives is:

> to protect . . . the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

29 U.S.C. § 1001(b). In guarding those interests, § 502(a) of ERISA confers standing on a plan participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The Third Circuit, like many other courts

of appeals, has held that, under § 502(a), "health care providers may obtain standing to sue by assignment from a plan participant." *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 176 n.10 (3d Cir. 2014).

### B. Removal of Elite Orthopedic's Complaint

Removal statutes are to be "strictly construed, requiring remand if any doubt exists over whether removal was proper." *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 218 (3d Cir. 2015). The removing party bears the burden of establishing that the federal court has jurisdiction at all stages of the case, *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004), and because removal is governed by the "well-pleaded complaint rule," the Court looks to the complaint to determine if it may exercise jurisdiction over a lawsuit. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987); *see also Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 353 (3d Cir. 1995) (citation and internal quotation marks omitted) ("To determine whether a claim arises under federal law-and thus is removable-we begin with the well-pleaded complaint rule."). Therefore, "[t]o support removal, '[a] right or immunity created by the Constitution or laws of the United States must be an element, and an essential one of the plaintiffs [sic] cause of action.'" *Pascack Valley Hosp. v. Local 464A UCFW Welfare Reimbursement Plan*, 388 F.3d 393, 398 (3d Cir. 2004) (second alteration in original) (citation and internal quotation marks omitted) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 10-11 (1983)).

But when the doctrine of complete preemption applies, the plaintiff's complaint need not present a federal cause of action on its face for removal to be proper. *Pascack Valley*, 388 F.3d at 399. This occurs when "Congress . . . so completely pre-empt[s] a particular area that any civil complaint raising a select group of claims is necessarily federal in character." *Taylor*, 481 U.S. at 63-64. ERISA § 502(a) is one such provision and converts all state law claims into federal ones,

when they are suits for the denial of medical benefits under an ERISA governed-health plan. *Pascack Valley*, 388 U.S. at 393. And, when removal is based on preemption, the court "may look beyond the face of the complaint to determine whether the plaintiff has artfully pleaded his suit so as to couch a federal claim in terms of state law." *Pryzbowski*, 245 F.3d at 274.

Aetna argues that Elite Orthopedic's breach of contract claims are preempted by § 502(a) because the assignment of the payment of benefits confers Elite Orthopedic with derivative standing to sue under that provision thereby converting its state law claims into federal ones. Elite Orthopedic asserts the assignment was a matter of convenience and was made only to obtain payment directly from Aetna. It argues that a limited assignment of the right to receive payment is insufficient to confer it with derivative standing.

The Third Circuit held that "when a patient assigns payment of insurance benefits to a healthcare provider, that provider gains standing to sue for that payment under ERISA § 502(a)." *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, No. 14-2101, 2015 WL 5295125, at *2 (3d Cir. Sept. 11, 2015). Applying this ruling, it is evident that the assignment of GK and RK's benefits under their ERISA plans confers derivative standing on Elite Orthopedics. This, in turn, means that any state law claims that are founded on an assignment of the right to receive payment of benefits from an ERISA-governed plan are preempted.

Elite Orthopedic for all purposes concedes that the assignments were for the payment of benefits when it argues that that the two assignments were given so that checks would be mailed to the office rather than the patients. (D.E. 5-1 at 4.) The contention that Elite's breach of contract claims are not founded on the assignment but on Aetna's pre-certification is unpersuasive. The breach of contract claims obviously look for recovery of insurance benefits under the insureds' health plan, and so they fall within the scope of § 502(a). *See Taylor*, 481 U.S. at 66 (finding that

the plaintiff's state law breach of contract claim was preempted by § 502(a) of ERISA because it fell within the provision's scope).

This Court therefore has original jurisdiction according to 28 U.S.C. § 1331, providing a basis for Aetna's removal of the action under 28 U.S.C. § 1441. Elite Orthopedic's motion to remand is denied.

### IV.    Conclusion

For the foregoing reasons, Elite Orthopedic's motion to remand is denied. An appropriate order will be entered.

Dated: September 30, 2015

/s/ Katharine S. Hayden_____
Katharine S. Hayden, U.S.D.J.